# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**ALBERTHA DIONNE BADON**                    **CIVIL ACTION**

**VERSUS**                                   **NO. 20-460-BAJ-RLB**

**U.S. DEPARTMENT OF AGRICULTURE**

## <u>NOTICE</u>

Please take note that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court for the Middle District of Louisiana.

Under 28 U.S.C. § 636(b)(1), you have **14 days** from receipt of this Notice to file written objections to the proposed findings of fact and conclusions of law in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on September 24, 2021.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**ALBERTHA DIONNE BADON**                    **CIVIL ACTION**

**VERSUS**                                   **NO. 20-460-BAJ-RLB**

**U.S. DEPARTMENT OF AGRICULTURE**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the United States of America's Motion to Dismiss Pursuant to Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure (the "Motion") in which the United States of America moves to dismiss all claims asserted by Albertha Badon ("Plaintiff" or "Badon") against Thomas Vilsack ("Vilsack"), Secretary of the United States Department of Agriculture (the "USDA"), and the United States of America (collectively, "Defendants"). (R. Doc. 42). Plaintiff filed an opposition, (R. Doc. 44), and Defendants filed a reply. (R. Doc. 45).[1] For the reasons discussed more thoroughly below, it is recommended that the Motion be **GRANTED** and that this matter be dismissed.

## I.    FACTUAL HISTORY[2]

Badon is a former Intermittent Schedule Agricultural Commodity Technician Grain ("ACTG") with the Federal Gain Inspection Services ("FGIS") of the USDA (the "Agency"). (R.

---

[1] Plaintiff's Surreply, (R. Doc. 47), was stricken from the record on July 28, 2021 because Plaintiff did not seek leave of court to file a 22-age surreply memorandum as required by Local Rule 7(f). (R. Doc. 56). Plaintiff was, however, granted leave to file a surreply memorandum, not to exceed 5 pages, by August 11, 2021. (R. Doc. 56). Plaintiff did not file a surreply, but instead filed a Motion for Non Sur Reply in which she explained that she was previously receiving assistance from a suspended attorney. (R. Doc. 59). She suggests that she is no longer receiving assistance from the suspended attorney and, therefore, could not convert the 22-page surreply into a 5-page memorandum without legal help. (R. Doc. 59 at 1).

[2] The facts have been taken from Plaintiff's Original Complaint, (R. Doc. 1), and Amended Complaint (collectively, the "Complaint"). (R. Doc. 37). The Court also takes judicial notice of (and, therefore, draws facts from) the following documents attached to Defendants' Motion to Dismiss: (1) Final Agency Decision dated August 10, 2018 in Albertha D. Badon v. Sonny Perdue Secretary Dep't of Agriculture, USDA Complaint No.: AMS-2018-0074; (R. Doc. 42-2) (2) the Initial Decision dated May 10, 2019 in Albertha D. Badon v. Dep't of Agriculture, DA-1221-19-0004-W-1; (R. Doc. 42-3); (3) the Order Entering Judgment in Dated April 10, 2020 in Albertha D. Badon v. Sonny

Doc. 1-1 at 92). She began her employment with the Agency on May 31, 2015 and was terminated on November 1, 2019. (R. Doc. 1-1 at 61 and 92). As an ACTG, Badon was assigned to the New Orleans Field Office in Area 4, which consists of the Louis Dreyfus Company Grain Elevator located in Port Allen ("Yard 4") and the Cooper T. Smith Stevedoring Co. Floating America Weigh Rig Loading and Transferring Facility located in Darrow, La (the "America Rig). (R. Doc. 1-1 at 92). Plaintiff's responsibilities included, *inter alia,* performing official sampling, weighing spillage checks, running mycotoxin tests, and looking at barge identification marks. (R. Doc. 1-1 at 28).

During Plaintiff's employment, she submitted several reports of unfair treatment, fraudulent billing, and other violations made by employees and supervisors of the Agency. In September 2017, Badon filed a complaint with the U.S. Office of Special Counsel ("OSC") alleging that the Agency violated Occupational Safety and Health Administration ("OSHA") laws by failing to follow proper safety procedures. (R. Doc. 42-4 at 7). On October 11, 2017, Plaintiff submitted a complaint to Samantha Simon, Director of the FGIS Field Management Division. (R. Doc. 1-1 at 89; R. Doc. 42-4 at 8). In this report, Badon alleged that shift supervisors were improperly scheduling employees "by providing certain favored employees preferred shifts while intermittent employees were not given the opportunity to work." (R. Doc.

---

Perdue, Secretary, U.S. Dep't of Agriculture, EEOC No. 460-2019-00199X, Agency No. AMS-2019-0057; (R. Doc. 42-4); and (4) the Initial Decision dated January 14, 2020 in Albertha D. Badon v. Dep't of Agriculture, DA-0752-20-0052-I-1. (R. Doc. 42-5). The Court may take judicial notice of these documents because they are matters of public records and orders issued by administrative agencies. *See King v. Life School,* 809 F.Supp.2d 572, 579 n.1 (N.D. Tex. 2011) ("Even though the EEOC charge is a matter outside the pleading, judicial notice of it may be taken as a matter of public record when deciding a Rule 12(b)(6) motion, especially since its authenticity is uncontested."); *Jackson v. Wilkie,* No. 4:19-CV-721-SDJ-CAN, 2020 WL 4912916, at *7 (E.D. Tex. July 21, 2020), *report and recommendation adopted*, No. 4:19-CV-721, 2020 WL 4884003 (E.D. Tex. Aug. 20, 2020) (taking judicial notice of EEOC documents attached to the defendants' motion to dismiss); *Perez v. Brennan,* No. 1:17-CV-00043, 2017 WL 5534244, at *3 (S.D. Tex. Nov. 17, 2017) (finding that the ALJ decision and EEOC appeal decision were matters of public record, undisputed, and were therefore appropriate for judicial notice); *Opoka v. I.N.S.,* 94 F.3d 392 (7th Cir. 1996) ("[I]t is a well-settled principle that the decision of another court or agency, including the decision of an administrative law judge, is a proper subject of judicial notice.").

1-1 at 89; R. Doc. 42-4 at 8). In November 2017, Plaintiff reported to Andrew Ping, the acting

Field Office Manager, that she was being treated unfairly because other employees were

permitted to leave thirty minutes early, while she was not. (R. Doc. 42-3 at 3). In March 2018,

Plaintiff notified (1) Carl Jackson—the New Orleans Assistant Field Office Manager, (2)

Anthony Goodeman—the Acting Field Management Director, and (3) Dana Cole—the Acting

FGIS Deputy Administrator, that "shift supervisors filled in for bargaining unit employees

(BUE) in order to take overtime away from them, did not work the hours, and fraudulently billed

the company." (R. Doc. 1-1 at 25; R. Doc. 42-3 at 2-3). As a result of Plaintiff's allegations, one

employee resigned, and another was terminated. (R. Doc. 1-1 at 25). On March 19, 2018,

Plaintiff reported that another employee, Shymetris Allen, was stealing time and habitually tardy.

(R. Doc. 1-1 at 25; R. Doc. 42-3 at 3). Plaintiff alleged that she was moved to another site after

reporting the acts of Shymetris Allen. (R. Doc. 1-1 at 25; R. Doc. 42-3 at 3).

On April 4, 2018, Field Office Manager, Kenneth W. DeWert, requested an investigation

of Badon's allegations of favoritism, mismanagement, time and attendance irregularities, and

harassment. (R. Doc. 42-4 at 9). He also requested an investigation into other employee's

allegations that Badon harassed another employee, copied customers on email messages

regarding internal agency business, conducted background checks of her co-workers, recorded

conversations of Agency employees without their consent, and appeared at the dock and

observed dock operations on days when she was not scheduled to work. (R. Doc. 42-3 at 12; R.

Doc.42-4 at 9).

In June 2018, Plaintiff was accused of urinating in a grain return bin, and, as a result, she

was placed under investigation for two months. (R. Doc. 1-1 at 25; R. Doc. 42-3 at 19). Plaintiff

was ultimately cleared of this allegation.

In August 2018, Badon filed a complaint with the OSC alleging that she was subject to discrimination and harassment based on reprisal. (R. Doc. 42-2 at 1). Plaintiff contends that the investigation was conducted in retaliation of her complaints of mismanagement and unsafe work conditions. (R. Doc. 1-1 at 92). Badon alleged that in retaliation for her various reports: (1) she was removed from the work schedule and sent home on unpaid leave; (2) management ordered her to provide a statement but not her accuser; (3) management ignored her and failed to answer her questions; (3) she was singled out and felt that she was being "shoved out the door;" (4) her name was slandered; and (5) she was being watched. (R. Doc. 42-2 at 1-2).

On September 10, 2018, the OSC notified Badon that it made a preliminary determination to close the investigation into Plaintiff's allegations of discrimination and harassment. (R. Doc. 1-1 at 73; R. Doc. 42-3 at 3). The OSC found that the Agency had good cause to investigate and not place Plaintiff on the schedule. (R. Doc. 1-1 at 74). On September 26, 2018, the OSC issued a "close-out letter" to Plaintiff explaining her right to appeal the OSC's decision. (R. Doc. 42-3 at 4).

On September 30, 2018, Badon filed an appeal with the Merit Systems Protection Board ("MSPB") in which she alleged that "the agency took personnel actions against her in retaliation for disclosures and activity protected by the Whistleblower Protection Act ("WPA") and the Whistleblower Protection Enhancement Act (WPEA) of 2012." (R. Doc. 42-3 at 1). Plaintiff's request for corrective action was denied by the MSPB on May 10, 2019. The MSPB found that Badon's "reports regarding improper scheduling, safety violations, timekeeping inconsistencies, and employees 'stealing time' […] are protected disclosures covered by" the WPA. (R. Doc. 42-3 at 12). It further found that Plaintiff's protected disclosures were a contributing factor in the Agency's decision to conduct the June 2018 investigation and remove Plaintiff from the work

schedule. (R. Doc. 42-3 at 14). The MSPB, however, declined to take corrective action because clear and convincing evidence established that the Agency would have conducted the investigation and removed Plaintiff from the work schedule in the absence of the Plaintiff's whistleblowing activity. (R. Doc. 42-3 at 14-15). The MSPB's decision became final on June 14, 2019. (R. Doc. 42-3 at 22).

On November 10, 2018, Plaintiff filed a formal complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that the Agency discriminated against her on the bases of reprisal in violation of the anti-discrimination laws of the EEOC by failing to place her back on the work schedule. (R. Doc. 42-4 at 5). The Agency filed a "Motion for Summary Judgment and Incorporated Memorandum in Support" on November 15, 2019. (R. Doc. 42-4 at 6). On April 10, 2020, the EEOC issued a Decision Without Hearing in which it found that Badon failed to establish a prima facie case of retaliation because "at the time" Badon "had initiated contact with an EEO counselor on October 9, 2018," she had "neither engaged in prior EEO activity nor opposed any practice made unlawful by the anti-discrimination laws enforced by the EEOC."[3] (R. Doc. 42-4 at 14-15). Moreover, Badon's "allegations of unfair treatment and favoritism were not based upon any practice made unlawful by the anti-discrimination laws but" were "based upon violations of the collective bargaining agreement." (R. Doc. 42-4 at 15). The EEOC further found that Plaintiff failed to establish disparate treatment because the Agency

---

[3] To overcome the Agency's motion for summary judgment, Plaintiff was required to establish a *prima facie* case of retaliation and disparate treatment. (R. Doc. 42-4 at 11-14). To establish a *prima facie* case of retaliation, Plaintiff must have established that (1) she engaged in protected activity; (2) the Agency was aware of the protected activity; (3) subsequently, she was subjected to adverse treatment by the Agency; and (4) a nexus exists between the protected activity and the adverse treatment. (R. Doc. 42-4 at 12). To establish a *prima facie* case of disparate treatment, Plaintiff was required to present facts "that, if unexplained, reasonably give rise to an inference of discrimination, i.e., that prohibited consideration was a factor in the adverse employment action." (R. Doc. 42-4 at 13). "Next, the [A]gency" had to "articulate a legitimate, nondiscriminatory reason(s) for its actions." (R. Doc. 42-4 at 13). Then Badon was required to "prove, by a preponderance of the evidence, that the legitimate reason(s) proffered by the [A]gency was a pretext for discrimination." (R. Doc. 42-4 at 13).

"had legitimate, non-discriminatory reasons for investigating" her, and there was "no evidence that other similarly situated intermittent employees were treated differently under similar circumstances," nor was there "any evidence that the" Agency's "reasons were based upon retaliatory animus." (R. Doc. 42-4 at 15).

On October 2, 2019, the Agency issued a Notice of Proposed Removal in which the Agency requested that Plaintiff be removed from her position no sooner than thirty (30) days from her receipt of same. (R. Doc. 1-1 at 20 and 90-92). The proposed removal was based on three charges of inappropriate conduct: (1) failing to report a violation of the U.S. Grains Standard Act; (2) engaging in disruptive behavior; (3) being disruptive during an official Agency meeting; and (4) inappropriately recording a telephone conversation. (R. Doc 1-1 at 90-92).

With respect to the first charge, Wendell T. Landry, Operations Manager at Cooper Consolidated, LLC, accused Plaintiff of failing to report her knowledge of other employees urinating in a sampler/return bin while on the America Rig. (R. Doc. 1-1 at 90-91; R. Doc. 42-3 at 15). Plaintiff was accused of engaging in disruptive behavior because she allegedly shared personally identifiable information about a co-worker that she gathered from the internet. (R. Doc. 1-1 at 27). Finally, Plaintiff was charged with being disrespectful during an official agency meeting on December 18, 2018. (R. Doc. 1-1 at 29). During this meeting, Plaintiff allegedly engaged in the use of profanity and referred to members of management with derogatory and disrespectful terms. (R. Doc. 1-1 at 29). As to the last charge, Plaintiff stated during a deposition that she recorded a phone conversation between her and co-worker, without the co-worker's consent. (R. Doc. 1-1 at 28).

Plaintiff submitted a written reply to the Notice of Proposed Removal on October 9, 2019. (R. Doc. 1-1 at 20-24). After considering Badon's response, the Agency issued a Letter of

Decision on Notice of Proposed Removal on October 30, 2019. (R. Doc. 1-1 at 29). Because Plaintiff failed to provide a complete copy of the Letter of Decision on Notice of Removal, the Court was only able to glean the Agency's decision on the first two charges. The Agency ultimately decided to uphold the first charge of failure to report a violation of the U.S. Grain Standards Act and dismiss the second charge of engaging in disruptive behavior by sharing personal information of co-workers. (R. Doc. 1-1 at 29).

On November 10, 2019, Badon filed an appeal to the Agency's decision to remove her from her position with the MSBP. (R. Doc. 42-5 at 1). She later filed a pleading to withdraw her appeal on January 10, 2020. (R. Doc. 42-5 at 1). The MSPB notified Plaintiff that withdrawal "is an act of finality." (R. Doc. 42-5 at 1). Plaintiff did not respond to the MSBP, and therefore, the MSPB withdrew Plaintiff's appeal and dismissed it with prejudice. (R. Doc. 42-5 at 2). The MSPB's dismissal because final on February 18, 2020. (R. Doc. 42-5 at 2).

## II.    PROCEDURAL HISTORY

Plaintiff initiated the instant matter on July 13, 2020 by filing a Complaint against Sonny Perdue ("Secretary Perdue"), former Secretary of the USDA.[4] (R. Doc. 1). In her Original Complaint, Plaintiff alleges intentional infliction of emotional distress, disparate treatment discrimination, retaliation/reprisal, whistleblower activity, "Constitutional Rights (Amendment 6)," pain and suffering, wrongful termination, slander, defamation, adverse employment action, and denial of due process during termination "(progressive discipline)." (R. Doc. 1-1 at 60).

On March 15, 2021, Plaintiff filed an Amended Complaint in which she added the United States of America as a defendant. (R. Doc. 37 at 3). She further included allegations that Defendants (1) engaged in unlawful employment practices by illegally designating certain

---

[4] On July 28, 2021, the Court granted Defendants' Motion to Substitute Thomas Vilsack, current Secretary of the United States Department of Agriculture, in place of Sonny Perdue.

8

employees as intermittent; (2) failed to adequately train Plaintiff and other employees, (4) subjected her to a hostile work environment, and (5) maliciously and negligently conducted investigatory proceedings against her. (R. Doc. 37 at 1-2).

Defendants filed the instant Motion on March 29, 2021. (R. Doc. 42). Therein, Defendants argue that the Court lacks subject matter jurisdiction over Plaintiff's whistleblower and wrongful termination claims. (R. Doc. 42 at 1). Defendants assert that under 5 U.S.C. § 7703(b)(1)(A), jurisdiction to review a final decision of the MSPB rests with the Federal Circuit, not the federal district court. (R. Doc. 42-1 at 11). Defendants further contend that the Civil Service Reform Act ("CSRA") precludes judicial review of claims arising from personnel decisions made within the federal government, including constitutional, tort, and contract claims. (R. Doc. 42-1 at 17). Next, Defendants argue that Plaintiff fails to state a claim for retaliation, reprisal, and disparate treatment claims should be dismissed for failure to state a claim upon which relief can be granted. (R. Doc. 42 at 2). Defendants argue that Plaintiff fails to establish a *prima facie* case for retaliation, reprisal and disparate under Title VII of the Civil Rights Act of 1964 ("Title VII") because she was not engaged in an activity protected by Title VII. (R. Doc. 42-1 at 14 and 16).

In opposition to Defendants' Motion, Plaintiff asserts an additional cause of action under the Racketeer Influenced and Corrupt Organization Act ("RICO"). (*See* R. 44 at 4). None of the allegations regarding RICO violations are found in the Complaint, and Plaintiff cannot raise them for the first time in opposition to a motion to dismiss. *Becnel v. St. Charles Par. Sheriff's Office,* No. 15-1011, 2015 WL 5665060, at *1 (E.D. La. Sept. 24, 2015) ("[It] is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss."). The Court, therefore, does not consider these allegations.

Plaintiff further responds to Defendants' 12(b)(1) objections by arguing that the Court has jurisdiction over her claims of constitutional violations—particularly, her claims that Defendants violated her right to due process under the Fifth and Fourteenth Amendments and right to confront her accuser under the Sixth Amendment ("Constitutional Rights Claims"). (R. Doc. 44 at 1 and 3). According to Plaintiff, *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388 (1971) "created a private damages action against federal officials for constitutional torts (civil rights violations)." (R. Doc. 44 at 1).

Finally, Plaintiff asserts that her Constitutional Rights Claims survive Defendants' 12(b)(6) arguments because Defendants "negligently" and "malicious[ly]" conducted investigatory process, which violated her rights to due process under the Constitution, by imposing upon her a presumption of guilt, rather than innocence, and failing to test the veracity of witnesses. (R. Doc. 44 at 3).

In response to Plaintiff's opposition, Defendants argue that *Bivens* only "provides a remedy for victims of constitutional violations by government officers in their individual capacities (i.e., not federal agencies) and requires a showing of each defendant's personal involvement." (R. Doc. 45 at 3) (citing *Affiliated Prof'l Home Health Care Agency v. Shala,* 164 F.3d 282, 286) (5th Cir. 1999)). According to Defendants, *Bivens* does not provide a cause of action against the United States. (R. Doc. 45 at 3). Moreover, a supervisory official, such Vilsack, can only be held liable in a *Bivens* action if he has personal involvement in the acts that caused deprivation of an alleged constitutional right or if he enforces a policy that results in a deprivation of an alleged constitutional right. (R. Doc. 45 at 3) (internal citations omitted). Defendants argue that nothing in Badon's complaints "suggests that the Secretary of the" USDA

was involved personally in the workplace conduct investigation against" Badon "or her termination." (R. Doc. 45 at 3).

## III.    LAW AND ANALYSIS

### A.    Motion to Dismiss Under Rule 12(b)(1)

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court shoulder consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001).

Rule 12(b)(1) allows a party to move for dismissal of an action for lack of subject matter jurisdiction. Federal courts have limited jurisdiction and are permitted to adjudicate cases and controversies only as permitted under Article III of the Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L.Ed. 2d 391 (1994). Accordingly, a claim is properly dismissed under Rule 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.,* 143 F.3d 1006, 1010 (5th Cir. 1998). The party asserting jurisdiction bears the burden of proving that such jurisdiction exists. *King v. U.S. Dep't of Veterans Affairs,* 728 F.3d 410, 416 (5th Cir. 2013).

A motion to dismiss for lack of subject matter jurisdiction may be characterized as either a facial or factual attack. *Rodriguez v. Texas Comm'n of Arts,* 992 F. Supp. 876, 878– 79 (N.D. Tex. 1998), *aff'd,* 199 F.3d 199 (5th Cir. 2000). The attack is facial when the defendant files a Rule 12(b)(1) motion without accompanying evidence. When considering a facial attack, the allegations in the complaint are taken as true. *Id.* On the other hand, a factual attack occurs when the defendant submits supporting affidavits, testimony, or other admissible evidence. *Id.* The plaintiff may also submit evidence to show by a preponderance that subject matter jurisdiction

exits. *Id.* When a factual attack is made the Court may consider any evidence submitted by the parties that is relevant to the issue of jurisdiction. *Rodriguez,* 992 F. Supp. at 879. Accordingly, dismissal for lack of subject matter jurisdiction may be made on any of three separate bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Noske Ojeselkop As v. HeereMac Vof,* 241 F.3d 420, 424 (5th Cir. 2001) *cert. denied,* 534 U.S. 1127 (2002).

In the instant matter, Defendants assert that the Court lacks subject matter jurisdiction over Plaintiff's claims under the Whistleblower Protection Act ("WPA"). (R. Doc. 42-1 at 2).

The Civil Service Reform Act provides a comprehensive framework for administrative and judicial review of prohibited actions taken against federal employees. *United States v. Fausto*, 484 U.S. 439, 455 (1988); *see generally* 6 U.S.C. §§ 2301-02. Such prohibited actions include unlawful discrimination, coercion of political activity, nepotism, and reprisal against so-called whistleblowers. 5 U.S.C. § 2302. The WPA "increases protections for whistleblowers, but it does so within the context of the" CSRA. *Grisham v. United States,* 103 F.3d 24, 26 (5th Cir. 1997). Particularly, the WPA protects federal employees from certain adverse employment actions taken because the employee made disclosures of wrongdoings that she "reasonably believes evidences a violation of law, rule, or regulation, or evidences gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific damage to public health or safety." *See* 5 U.S.C. § 2302(B). Accordingly, any action taken under the WPA must adhere to the CSRA's scheme for judicial and administrative review.

Under the statutory scheme set forth in the CSRA, an employee who believes she is the victim of an unlawful reprisal must first bring her claim to the OSC. *Thomas v. Odis C. Norris,*

No. 1:07-CV-573, 2009 WL 3856920, at *7 (E.D. Tex. Nov. 16, 2009). If the OSC finds that a prohibited action was conducted in violation of 5 U.S.C. § 2302, it will report its findings to the MSPB and it can petition the MSPB on behalf of the employee. *Id.* If, on the other hand, the OSC finds no agency wrongdoing, then the employee may bring an action before the MSPB. 5 U.S.C. §§1221, 124(a)(3). Thereafter, the employee may seek judicial review of an adverse MSPB ruling. *Id.* Review of an MSPB decision is available either in the Federal Circuit or in federal district court, but the proper forum depends on the nature of the MSPB decision. *Kloeckner v. Solis,* 568 U.S. 41, 56 (2012). Particularly, the employee may file suit in a federal district court if the matter involves a "mixed case." *Id.* A mixed case is defined as one that involves discrimination based on race, color, religion, sex, national origin, age, disability, or genetic information related to or stemming from an action that can be appealed to the MSPB. 29 C.F.R. § 1614.302(a)(1).

Here, Plaintiff does not (and has not at any stage of the administrative proceedings) allege that she has been discriminated against because of any of the acceptable grounds. Instead, Plaintiff alleges that she was discriminated against because of her whistleblower activity of reporting improper scheduling, safety violations, timekeeping inconsistencies, and employees stealing time. Accordingly, this not a mixed case, and therefore, not within this Court's jurisdiction. Plaintiff's claims under the CSRA and the WPA must be dismissed.

### B.    Motion to Dismiss Under Rule 12(b)(6)

When deciding a Rule 12(b)(6) motion to dismiss, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and citations omitted). A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the

legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court may consider the Complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Funk v. Stryker Corp.,* 631 F.3d 777, 783 (5th Cir. 2011). The Court may also consider documents that a defendant attaches to its motion that are referred to in the complaint and are central to the plaintiff's claims. *Causey v. Sewell Cadillac-Chevrolet, Ind.,* 394 F.3d 285, 288 (5th Cir. 2004); *In re Katrina Canal Breaches Litig.,* 495 F.3d at 205.

The documents considered must show that there exists plausibility for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Aschcroft v. Iqbal,* 556 U.S. 662 (2009). When determining plausibility, the Court does not assume the truth of conclusory statements, but rather looks for facts which support the elements of the pleader's claim. *Twombly,* 550 U.S. at 557. Factual assertions are presumed to be true, but mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" alone are not enough to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678.

Further, "[a] document filed *pro se* is to be liberally construed… and a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id*. (internal quotation marks and citations omitted). Notwithstanding, the Court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain,* 478 U.S. 265, 286, 106 S. Ct. 2932, 2944, 92 L.Ed. 2d 209 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Iqbal,* 556 U.S. at 678.

Defendants make four arguments in support of their motion to dismiss for failure to state a claim upon which relief can be granted: (1) Plaintiff's tort, wrongful termination, and Constitutional Right Claims are barred by the CSRA; (2) Plaintiff has not properly plead the elements that would establish she is entitled to relief for retaliation and reprisal; (3) Plaintiff fails to establish a plausible claim for disparate treatment; and (4) Plaintiff failed to exhaust the proper administrative remedies with respect to her tort, wrongful termination, and Constitutional Right Claims.

### 1. Tort and Constitutional Right Claims

Plaintiff asserts the following tort claims: intentional infliction of emotional distress, pain and suffering, slander and defamation, and denial of due process during termination. She further makes allegations of failure to properly train employees and illegal designation of intermittent status. She further alleges that Defendants violated her right to due process under the Fifth and Fourteenth Amendments and right to confront her accuser under the Sixth Amendment. (R. Doc. 44 at 1 and 3).

Defendants assert sovereign immunity to Plaintiff's intentional infliction of emotional distress, slander, and defamation claims. (R. Doc. 42-1 at 16-17). The United States may not be sued without its consent. *Simons v. Vinson,* 394 F.2d 732,735-36 (5th Cir. 1968). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer,* 510 U.S. 471, 475 (1994) (internal citations omitted). "[A] waiver of the traditional sovereign immunity cannot be implied but must be unequivocally expressed." *United States v. Testan,* 424 U.S. 392 (1976). The Federal Tort Claims Act ("FTCA") provides a limited waiver of the United States sovereign immunity for tort claims that allows the government to be sued by certain parties under certain circumstances. Actions for libel and slander, however, are

specifically excepted from waiver provided by the FTCA. 28 U.S.C. § 2680(h). Likewise, a defamation claims against the United States is not cognizable under the FTCA. *Siegert v. Gilely,* 500 U.S. 226, 233, 234 (1991).

The Court further agrees that Plaintiff cannot bring her Constitutional Right Claims under the guise of a *Bivens* action. *Bivens* does not waive the government's immunity in a suit for monetary or injunctive relief. *See Garcia v. United States,* 666 F.2d 960, 966 (5th Cir. 1982). Accordingly, Plaintiff's Constitutional Rights Claims against the United States fails as it is immune from suit. Plaintiff's claims against Vilsack fail for the same reason. Suit against an officer in his official capacity is essentially a suit against the United States. *See Kentucky v. Graham,* 473 U.S. 159, 166 (1985) ("[A] plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.").

*Bivens* only allows suits against officers in their individual capacity. *Affiliated Prof'l Home Health,* 164 F.3d at 286. Plaintiff's Constitutional Rights Claims, however, still fail even assuming Plaintiff's claims are brought against Vilsack in his individual capacity. The Supreme Court has held that a supervising official does not violate a victim's constitutional rights unless he played an "affirmative part" in the alleged misconduct of the subordinates. *Rizzo v. Goode*, 423 U.S. 362, 377 (1976). This requires Plaintiff to show that the Vilsack was personally involved in the acts causing deprivation of her constitutional rights or implemented a policy so deficient that the policy itself acts as a deprivation of constitutional rights. *See Cronn v. Buffington,* 150 F.3d 538, 544 (5th Cir.1998); *Abate v. Southern Pac. Transp. Co*., 993 F.2d 107, 110 (5th Cir.1993).

Plaintiff's Complaint is bereft of any allegations showing that Vilsack either had personal involvement in the violation of Plaintiff's constitutional rights or enforced a policy that

16

resulted in same. Indeed, other than naming Vilsack as Defendant, Plaintiff's Complaint is devoid of any allegations pertaining to Vilsack.

Finally, the Court finds that the CSRA bars Plaintiff's remaining tort and Constitutional Rights Claims. As Defendants point out, the crux of Plaintiffs' claims is that the Agency created a fraudulent and "trumped up case" to "defile and slander" Plaintiff's reputation and terminate her. (R. Doc. 1-1 at 2 and 66). During the so-called "trumped up case," Plaintiff's constitutional rights were violated because the Agency breached "its de facto obligation of good faith and fair dealing" and refused to provide Plaintiff an opportunity to meet her accuser. (R. Doc. 1-1 at 65 and 79). Accordingly, all of Plaintiff's claims are essentially a challenge to her employment termination with the Agency. The Fifth Circuit adheres to the "congressional intent that civil service remedies be the exclusive means for federal employees to challenge wrongful termination decisions." *Rollins v. Marsh,* 937 F.2d 134, 139 (5th Cir. 1991) ("While we should be reluctant judicially to erode the broad remedy provided by the Federal Tort Claims Act, we are equally reluctant to ignore a congressional intent that civil service remedies be the exclusive means for federal employees to challenge wrongful termination decisions."). In light thereof, Court finds that the CSRA is the exclusive remedy for Plaintiff's tort and Constitutional Rights Claims, and Plaintiff's is, therefore, precluded from asserting same. If Plaintiff seeks to obtain relief for those claims, she must do so within the purview of the CSRA.

Accordingly, the Court finds that Plaintiff's tort and Constitutional Right Claims must be dismissed.[5]

---

[5] Because the Court finds that Plaintiff's tort, wrongful termination, and Constitutional Right Claims are either barred by CSRA or she fails to state a claim upon which relief can be granted, the Court deems it inefficient to provide a detailed analysis of Plaintiff's failure to exhaust administrative remedies.

### 2. *Disparate Treatment*

Plaintiff asserts that she is entitled relief for disparate treatment discrimination because she was singled out and treated differently than similarly situated employees because of her whistleblower activity. (R. Doc. 1-1 at 67). Plaintiff's allegations are consistent throughout the pleadings and briefing. While it is clear that plaintiff is female, she does not assert that any actions were taken on the basis of her sex. Plaintiff also does not assert that she is a member of any other protected class or that any actions were taken against her on that basis. Because plaintiff is proceeding pro se, the Court will analyze her claims under the framework of a disparate treatment claim under Title VII.

Under the disparate treatment theory, Plaintiff bears the initial burden of proving a *prima facie* case of discrimination. *McDonnel Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). To establish a *prima facie* case of discrimination" under Title VII, an employee must demonstrate that she "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other situated employees outside the protected group." *Caldwell v. Lozano,* 689 F. App'x 315, 321 (5th Cir. 2017).

Disparate treatment occurs "[w]here an employer has treated a particular person less favorably than others because of a protected trait." *Ricci v. DeStefano*, 557 U.S. 557, 577, 129 S. Ct. 2658, 2672, 174 L. Ed. 2d 490 (2009). Accordingly, to satisfy the first prong, Plaintiff must show that she was discriminated against because of a trait that is protected by Title VII. The anti-discrimination provision of Title VII prohibits an employer from: (1) failing or refusing to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, *because of such individual's race, color, religion, sex, or national origin;* or (2) limiting, segregating, or classifying his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, *because of such individual's race, color, religion, sex, or national origin.* 42 U.S.C. § 2000e-2(a).

As evidenced by the italicized words, Title VII provides an exhaustive list of protected traits: race, color, religion, sex, and national origin. Plaintiff does not claim to have been discriminated against because of her race, color, religion, sex, or national origin. Rather, Plaintiff explicitly states that she received disparate treatment (discrimination) in "illegal retaliation" for her disclosures regarding mismanagement and unsafe work conditions, her reports about Carl Jackson and Shymetris Allen, her reports that the Agency showed favoritism, and her reports of wage and hour discrepancies. (R. Doc. 1-1 at 6, 80, and 89). Badon's disclosures are not encompassed by Title VII's list of protected traits. Accordingly, Plaintiff fails to state a claim for disparate treatment.

### 3. *Retaliation and Reprisal*

To establish a *prima facie* case of retaliation the plaintiff must show: (1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 348 (5th Cir.2007); *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802–04.

With respect to the first prong, the anti-retaliation provision of Title VII provides that it is unlawful employment practice to discriminate against an employee because she "has opposed any practice made an unlawful employment practice" by Title VII or "has made a charge,

testified, assisted, or participated in any manner in an investigation proceeding, or hearing under" Title VII. 42 U.S.C. § 2000e-3(a). As detailed in the analysis of Plaintiff's disparate treatment claim, an unlawful employment practice under Title VII includes "fail[ing] or refus[ing] to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Plaintiff has not alleged that she was investigated and subsequently discharged because of her race, color, national origin, or religion, and therefore she has not shown that she suffered the type of discrimination that is protected by Title VII. Likewise, she has not shown that she was retaliated against for opposing conducted that is prohibited by Title VII's anti-discrimination provision.

The conduct opposed by Plaintiff includes (1) improperly scheduling employees "by providing certain favored employees preferred shifts while intermittent employees were not given the opportunity to work;" (2) being treated unfairly as other employees were permitted to leave thirty minutes early; "shift supervisors filled in for bargaining unit employees (BUE) in order to take overtime away from them, did not work the hours, and fraudulently billed the company;" (4) Shymetris Allen, was stealing time and habitually tardy. The conduct complained of by Badon has "nothing to do with race, color, religion, sex, or national origin," and therefore, her "retaliation claim cannot be maintained under Title VII." *Allen v. Envirogreen Landscape Pros., Inc.,* No. 14-506-JWD-RLB, 2016 WL 2343855, at *5 (M.D. La. May 3, 2016) (internal citations omitted). In addition, her opposition to the instant motion likewise contains no such allegations. Because the conduct opposed by Badon is not protected by Title VII, her claims for retaliation and reprisal must be dismissed.

**IV.    CONCLUSION**

Based on the foregoing,

**IT IS RECOMMENDED** that the Defendants' Motion to Dismiss Pursuant to Rules

12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure (R. Doc. 42) be **GRANTED** and that

Plaintiff's claims be **DISMISSED.**

Signed in Baton Rouge, Louisiana, on September 24, 2021.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**